OPINION OF THE COURT
John M. Hunt, J.
I
This case raises the issue of whether the court has jurisdiction to hear a petition filed by the Office of Children and Family Services which seeks to extend the placement of an adjudicated juvenile delinquent who is now 19 years old and who objects to any further extension of his placement.
By petition filed pursuant to Family Court Act'§ 310.1 on January 10, 2007 respondent, who was born on February 5, 1993, was alleged to have committed acts which, were he an adult, would constitute the crimes of attempted criminal sexual act in the first degree (Penal Law §§ 110.00, 130.50 [3]) and attempted sexual abuse in the first degree (Penal Law §§ 110.00, 130.65 [3]). The respondent’s four-year-old brother was the alleged victim of the incidents charged in the petition.
On February 6, 2007 respondent entered an admission that he committed an act which, were he an adult, would have constituted the crime of attempted sexual abuse in the first degree. Following a dispositional hearing and by order dated May 3, 2007, respondent was adjudicated to be a juvenile delinquent (Family Ct Act § 352.1 [1]), and he was placed in the custody of the New York State Office of Children and Family Services (OCFS) for a period of 18 months (with a minimum period of six months’ confinement in a residential facility), with the direction that OCFS place respondent in the custody of Children’s Village, an authorized agency within the meaning of Social Services Law § 371 (10) (Family Ct Act §§ 352.2 [1] [c]; 353.3 [1], [3], [4], [9]).[1] The order of disposition further directed that OCFS and the authorized agency were to provide respondent with sex offender treatment as well as all services which were recommended by mental health professionals who had previously examined him.
On April 8, 2008 OCFS filed a permanency petition concerning the respondent’s placement in accordance with Family Court *839 Act § 355.5 (3) (a).[2] By order dated May 9, 2008 the court approved the agency’s permanency plan for the respondent who was then 15 years old, and respondent’s placement in the custody of OCFS was continued (Family Ct Act § 355.5 [9]).
A petition seeking an extension of respondent’s placement and a petition for a permanency hearing were filed by OCFS on September 9, 2008. By order dated November 12, 2008 the Family Court (Stephen J. Bogacz, J.) granted the petition to extend respondent’s placement with OCFS for 12 months (Family Ct Act §§ 353.3 [7]; 355.3 [4]), and the court further approved of the agency’s permanency plan for the respondent (Family Ct Act § 355.5 [7]). In the order extending respondent’s placement and approving the permanency plan, the court stated, inter alia, that “return of the respondent to the home would be contrary to the best interests of the respondent because the respondent’s victim still lives in the home that [he] would return to, [and] respondent has not completed sex offender treatment.”
A second petition requesting an extension of respondent’s placement and a third permanency petition were filed by OCFS on August 20, 2009, and by order dated November 12, 2009 this court extended respondent’s placement with OCFS upon his consent for an additional 12 months. At the time that the order was issued the respondent was placed at the OCFS facility at Highland and he was 16 years old. In granting the extension of placement and the permanency petitions the court found that OCFS has exercised reasonable efforts to achieve permanency for the respondent. Specifically, the court determined that respondent was continuing to receive appropriate services and therapy from OCFS and that he would also be enrolled in programs to facilitate his transition to independent living, as there was no alternative living arrangement available to him (Family Ct Act § 355.5 [7] [a], [b]).
*840 On October 22, 2010 OCFS filed a third petition seeking extension of respondent’s placement and a fourth permanency hearing petition. Following proceedings upon these petitions, the court issued an order dated November 15, 2010 which extended respondent’s placement with OCFS until May 5, 2011. At the time that this order was issued, respondent was 17 years old, and was placed at the Martin De Forres Group Home, where he continued to receive therapy and counseling, he was enrolled in the agency’s independent living transition program, and he was successfully attending high school at the Martin De Forres High School in Rosedale. In extending respondent’s placement with OCFS until May 15, 2011 upon his consent, the court determined that OCFS had continued to exercise reasonable efforts to achieve the permanency goal of release to independent living, as reflected in a November 15, 2011 report from the caseworker assigned to respondent at Martin De Forres Group Home.
According to the caseworker, arrangements were being made for respondent to be placed with the New York City Administration for Children’s Services after his placement with OCFS terminated, “in order to continue his preparation for independent living.” Indeed, the caseworker indicated that respondent would be afforded the “unique opportunity to remain with our program beyond his OCFS commitment and up to the time he is 21 years of age or is prepared for independent living.” To that end, Martin De Forres personnel had facilitated a “supportive relationship” between Langston and his adoptive mother, although there was no plan for him to resume living with her and his younger brother (the victim in the underlying juvenile delinquency case), whom the adoptive mother described as “being ‘mentally disturbed.’ ” Additionally, the agency had enrolled Langston in a program known as “Bridges to Health” which is intended to facilitate respondent’s ultimate transition to independent living by providing him with a network of support services that would continue up until he turned 21 years of age.[3]
On April 28, 2011 OCFS filed a fourth petition seeking to extend respondent’s placement as well as a fifth permanency *841 petition. Following proceedings upon these petitions, and upon the consent of the respondent, by order dated May 23, 2011, respondent’s placement with OCFS was extended until July 22, 2011, and the court found that OCFS was continuing to exercise reasonable efforts to achieve the permanency goal of discharging Langston to independent living. Reports submitted to the court by Martin De Forres personnel indicated some deterioration in respondent’s progress towards independent living. Specifically, Langston’s caseworker at the agency indicated that his participation in services offered by the agency was “variable” and the agency was concerned that respondent, who was then 18 years old, “lacks the emotional and social skills [necessary] to develop healthy relationships with members of the community, such that will keep him insulated from harm and reduce his chances of becoming homeless.”
The caseworker from Martin De Forres stated that the agency was exploring the option of placing the respondent in the custody of the State Office of Mental Health (OMH) for placement in an OMH managed independent living facility based upon the agency’s belief that Langston was not prepared to be discharged into the community to live on his own. In order to achieve this arrangement, the agency requested that the court extend respondent’s placement with OCFS for two months.
A supplemental report to the court from Martin De Forres indicated that respondent had been accepted into a specialized program providing housing for young adults who have been recently discharged from foster care. In addition, respondent had been enrolled in a work internship in a department store and that this experience has been positive, and the agency had enrolled him in the Bridges to Health program to facilitate his discharge from OCFS custody and the Martin De Forres Group Home to a structured community residence under the auspices of OMH. As noted by the agency, the intent of these efforts was to assist Langston in learning to live somewhat independently after years of being placed away from the community with OCFS or an authorized agency. Respondent would also be provided with continuing services from Martin De Forres personnel after he moved to the OMH community residence up until he reached age 21.
Thereafter, on July 20, 2011 OCFS filed a fifth petition seeking extension of respondent’s placement and a sixth permanency petition. Following several days of proceedings upon the two petitions, the court issued an order on consent of the par *842 ties on September 1, 2011 which extended respondent’s placement for 12 months and until July 22, 2012. The court also granted the permanency petition, finding that OCFS continued to exercise reasonable efforts to achieve the permanency goal of discharging Langston to independent living.
At the time of the issuance of the September 1, 2011 orders, respondent was 18 years old and he continued to reside at the Martin De Porres Group Home. According to information provided to the court, the group home had discontinued the administration of psychiatric medications to the respondent based upon his request. The group home reported that Langston still had difficulty controlling his emotions, he continued to engage in verbal altercations with agency staff, and physical confrontations with other residents of the group home. It was reported that Langston was continuing his education and making progress towards receiving his high school diploma. The agency also reported significant problems in respondent’s ability to work with staff from the Bridges to Health independent living program, such that the program had terminated Langston after several attempts to match him with a suitable counselor. Nevertheless, Martin De Porres staff had continued with its efforts to locate an appropriate “residential group home or mental health facility” for the respondent and several interviews for acceptance in a group home or a community-based mental health program would be upcoming in the near future.
A supplemental report dated September 1, 2011 noted the continuing difficulty in locating a suitable community-based facility to which respondent could be discharged, as well as the fact that respondent had continued to comply with the course of psychiatric medications prescribed by the agency’s psychiatrist. In the absence of a suitable adult residential facility, Martin De Porres staff reported that the respondent would continue to live in their facility where he could receive services, provided that he remained in placement through OCFS. The agency also noted that it continued to encourage Langston to participate in individual counseling with his psychologist and to work with the Bridges to Health program, both of which would assist him in making a transition to the community.
Finally, on June 12, 2012 OCFS filed the current petitions seeking to extend respondent’s placement and seeking approval of its permanency plan for respondent. Respondent, whose current placement with OCFS expires on July 22, 2012, and who is now 19 years old, appeared in court on July 11, 2012 and *843 expressed his objection to any further extension of his placement in the custody of OCFS. Respondent indicated that his plan is to reside with his girlfriend and her mother once he is discharged from the custody of OCFS and he departs the Martin De Porres Group Home where he has lived for the past several years.
II
Respondent, through his attorney, has moved for dismissal of the petition filed by OCFS which requests an extension of placement. The question of whether the Family Court has jurisdiction to hear the petition and to extend respondent’s placement over his objection is governed exclusively by statute.
“Family Court Act § 352.2 authorizes five dispositions of a youth who has been adjudicated a juvenile delinquent: conditional discharge, probation, placement with OCFS, placement in a mental hygiene facility and, in the case of a juvenile who has committed a designated felony, restrictive placement pursuant to Family Court Act § 353.5” (Matter of Robert J., 2 NY3d 339, 343 [2004]).[4]
Pursuant to Family Court Act § 353.3 “[i]f the respondent has committed a felony the initial period of placement shall not exceed eighteen months. If the respondent has committed a misdemeanor such initial period of placement shall not exceed twelve months” (Family Ct Act § 353.3 [5]), and “[t]he court may extend a placement pursuant to section 355.3 of this part” (Family Ct Act § 353.3 [7]).
The “initial placement statute does not contain a maximum age limitation” (Robert J. at 344; see also Matter of Matthew L., 65 AD3d 315, 318 [2009]) and “every form of placement with OCFS must cease upon a young person’s 21st birthday” (Robert J. at 344; see Executive Law § 507-a [2] [a]). While the court is authorized to extend a juvenile’s placement with OCFS, the portion of the statute governing extensions of placement provides that “no placement may be made or continued beyond the respondent’s eighteenth birthday without the child’s *844 consent and in no event past the child’s twenty-first birthday” (Family Ct Act § 355.3 [6]; Robert J. at 345; Matthew L. at 318).[5]
Here, respondent twice consented to extensions of his placement with OCFS after he turned 18 years of age on February 5, 2011, and he has indicated that he will not consent to any further extensions, notwithstanding that OCFS is legally authorized to continue to maintain him in a non-secure facility and provide him with services until he reaches age 21 (Executive Law § 507-a [5]). However, respondent is now a 19-year-old adult who is legally entitled to determine his own future, whether or not this court, OCFS, or the professionals at the Martin De Forres Group Home concur with respondent’s decision to leave foster care at this time.
Given that respondent’s consent is an indispensable prerequisite to any further extension of his placement with OCFS, and he has indicated that such consent will not be given, the court must conclude that while there is jurisdiction to consider the petition to extend placement with OCFS as respondent is less than 21 years old, the petition has been rendered academic because respondent will not consent to any further extension of his placement (Matter of Clifford O., 177 AD2d 837, 838 [1991]).
It is therefore ordered, that the branch of the supplemental petition filed on June 29, 2012 (supplemental petition 12G) which seeks to extend his placement in the custody of OCFS is dismissed as academic for the reasons stated herein; and it is further ordered, that the branch of the petition seeking a reasonable efforts finding for the period of time during which the respondent has been placed with OCFS pursuant to the order dated September 1, 2011 remains viable (see Matter of Martin E., 23 AD3d 959, 960 [2005]), and the court will proceed to conduct a permanency hearing in accordance with Family Court Act § 355.5.

. Family Court Act § 353.3 (9) provides that where the court places a respondent with OCFS after finding that the child has committed an act which would constitute a felony, “the court may, in its discretion, further order that such respondent shall be confined in a residential facility for a minimum period set by the order, not to exceed six months.”

. Where the respondent is placed for a period of up to 12 months, a permanency petition shall be filed and the permanency hearing shall be conducted simultaneously with a petition requesting an extension of placement (Family Ct Act § 355.5 [2] [a], [b]). Where the respondent is placed for a period of up to 18 months based upon a finding that a felony was committed, the initial permanency petition shall be filed and the permanency hearing conducted not more than 12 months after the juvenile entered foster care (Family Ct Act § 355.5 [3] [a]). While the first permanency hearing is conducted prior to the filing of a petition to extend placement in the case of a juvenile placed for more than 12 months, any further permanency hearing petitions are to be filed and hearings conducted at the same time as a petition seeking to extend the child’s placement (Family Ct Act § 355.5 [3] [b]).

. Although there was an attempt to place respondent in the custody of the Administration for Children’s Services (ACS), that placement never occurred. On October 20, 2010 the Commissioner of ÁCS filed a petition seeking approval of an instrument voluntarily transferring care and custody of Langston to ACS (Social Services Law § 358-a); however, the petition was subsequently withdrawn by ACS on November 15, 2010 without the approval of the placement instrument by the court.

. The statute also authorizes the court to place a juvenile delinquent in the custody of the department of social services (Family Ct Act § 353.3 [1], [2]; see Social Services Law § 398 [3] [c]; Matter of Anthony E., 82 AD3d 1544, 1546 [2011]; Matter of Gordon B., 83 AD3d 1164, 1167 [2011], lv denied 17 NY3d 710 [2011]; Matter of Clarence D., 88 AD3d 1074 [2011]).

. A different rule applies where a juvenile delinquent has been restrictively placed pursuant to Family Court Act § 353.5. In such instance, the court is authorized to extend the juvenile’s placement until the child’s 21st birthday, whether or not the child consents to such extension (Family Ct Act § 353.5 [4] [d]; [5] [d]; see Matter of Mickie PP., 279 AD2d 943, 943-944 [2001]).